## Pack v. Commonwealth.

### (Decided June 27, 1928.)

### Appeal from Johnson Circuit Court.

1. Homicide.—In prosecution for killing mother-in-law, verdict of manslaughter held not flagrantly against evidence.

2. Homicide.—In prosecution for killing mother-in-law where father-in-law testified that accused "beat my wife and girl," and court overruled motion to exclude, held, that testimony, if error, was immaterial; facts being proved in connection with evidence introduced by accused.

3. Homicide.—In prosecution for killing mother-in-law, where witness testified that she saw accused shoot her mother and that accused never came without gun buckled on right side, though admission of such statement was erroneous, held, that it was not prejudicial, since it tended to prove that accused did not arm himself for purpose of killing, but that he was merely accustomed to carry pistol; hence evidence was beneficial rather than prejudicial.

4. Homicide.—In prosecution for killing mother-in-law, where witness while being cross-examined was required, over accused's objection, to state that mother-in-law was deformed, being a hunchback, held, that commonwealth had right to prove physical condition of person killed, since accused claimed to have killed in self-defense.

5. Witnesses.—In prosecution for killing mother-in-law, where witness for accused testified that accused had not indicated any desire or intention to harm any member of family, testimony of witnesses, accompanying accused's witness for doctor after shooting that accused's witness had stated accused had killing in his heart that night, held inadmissible for purpose of affecting credibility of accused's witness, by reason of Civil Code of Practice, sec. 597. providing manner in which witness may be impeached.

6. Criminal Law.—In prosecution for killing mother-in-law, where in argument to jury attorney hired to help prosecution stated that defendant knocked out teeth of wife and pulled locks of hair from her head, with portions of scalp attached thereto, held, that such argument was prejudicial, there being no evidence in record to sustain statements.

A. F. BYRD for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

Appellant, J. Benson Pack, killed his mother-in law,
Julia Castle. He was indicted for murder, and when
tried was found guilty of manslaughter. His punishment
was fixed by the jury at confinement in the penitentiary
for 20 years and 1 day, and judgment of the court was
entered accordingly. Hence, the appeal.

It is insisted that the verdict of the jury is not sup-
ported by the evidence; hence that the judgment should
be reversed. A consideration of the facts leads to the
conclusion that this contention cannot be sustained. Ap-
pellant had married Mona Castle, the daughter of Harry
and Julia Castle. Some time prior to the homicide, he
and his wife appear to have had serious differences, in
the course of which he mistreated and abused her, and
on one or more occasions beat and bruised her. As a
result of this, her parents became much incensed at him;
and in conversations relating to this mistreatment of her
daughter at the hands of appellant deceased, Julia
Castle, spoke most unkindly of him and frequently as-
serted that she could gladly have killed him if she had
been present. She also frequently threatened to kill him
if he ever undertook to mistreat her daughter in her pres-
ence. The record establishes without contradiction, how-
ever, after these occurrences the parties had become
reconciled. For some three or four weeks before the
homicide appellant, Benson Pack, and his wife lived in
the home with her parents, Harry and Julia Castle.

On the afternoon of August 13, 1926, appellant and
one Deb Justice were together on his farm and the latter
purchased from him some hogs. It was about dark when
the deal was concluded, and as they left Justice invited
Pack to go home and spend the night with him. Pack
suggested that they go by the home of the Castles, and
if the wife desired to do so they would accept the invita-
tion. For this reason Justice and Pack together went to
the home of Harry and Julia Castle. When they arrived
there, Pack called, "Hello," and his wife came to the
front door. Learning that it was her husband, she
stepped out onto the walk and about four feet from the
edge of the porch met and engaged him in conversation.
Mr. Castle went onto the porch and talked a few moments
with Mr. Justice and then invited him and his son-in-law

to enter the house and have supper. When Mrs. Pack left the house, she carried her infant baby in her arms. The witnesses are all agreed up to this point, and there is no conflict in the evidence. Thus far there is no evidence of words or actions indicating unkind feeling upon the part of any one or trouble of any character.

As to what happened thereafter the witnesses for the commonwealth and those for the defendant differ widely. The commonwealth introduced Harry Castle, the surviving husband of the slain woman, Bonnie Castle, her daughter, and two nephews of hers who were present at her home when the tragedy occurred. Appellant and Deb Justice, who was with him, testified on the other side. The testimony for the commonwealth was to the effect that after he invited appellant and Mr. Justice to have supper with them, Harry Castle re-entered his home. Shortly thereafter Mrs. Pack, who had been left on the walk immediately in front of the house talking with her husband, was heard to scream. Mr. and Mrs. Castle and their younger daughter, Bonnie, ran to the front door. When they reached the door Pack, using a pistol, fired three shots, the first of which struck and passed entirely through Mrs. Castle's body and entered the arm of her daughter Bonnie, who at the time had her arm around the shoulders of her mother. Neither of the other shots took effect. The witnesses for the commonwealth say that neither of them said or did anything to cause appellant to shoot.

Appellant's testimony and that of Deb Justice for him was to this effect: While Mrs. Pack was talking to her husband and when Mr. Castle invited Mr. Justice to have supper, he said, "No, I am waiting on Bensie to see if his wife wants to go over with us tonight." Mr. Castle then said: "No, he is not going to drag her out tonight." Pack said: "I reckon she can go if she wants to." Castle said: "No, you are not going to take her out tonight." Pack said: "Harry, I reckon she could go if she wanted to." Castle "made a dive" in the door, saying, "I will settle with you right now," and immediately reappeared with a shotgun which he was loading. Julia Castle also came to the door and her daughter Bonnie Castle was with her holding her. Mrs. Castle had her pistol, which she presented at appellant and began to shoot, firing two shots. Appellant then, to defend himself from the impending danger, drew his pistol and fired three times.

Under these facts it cannot be said that the verdict is flagrantly against the evidence. Perhaps the most reasonable conclusion to reach from all the evidence is that with the background of previous trouble and hostility which had been forgotten in the recent reconciliation, when Pack proposed that his wife go with him to spend the night at the home of Justice, and Mr. Castle said that she could not do so, Pack resented this as unwarranted interference; and when Mr. Castle persisted in his opposition to the proposed visit and insisted that his daughter and her child should not be taken out that night, Pack immediately was overcome with ungovernable passion and began to shoot into the Castle home. In any event it cannot be said that the verdict is flagrantly against the evidence.

It is urged that the court erred in admitting prejudicial evidence against appellant. While Harry Castle was testifying for the commonwealth, he testified that there had been previous trouble between Benson Pack and him and his wife, and then was asked what the trouble was about and answered: "He beat my wife and girl up and they lawed him." This was objected to, and the trial court overruled defendant's motion to exclude it. Assuming without deciding that this testimony was erroneous as introduced here, it appears that the same fact got into the record in an unquestionably proper manner. Defendant introduced a number of witnesses to prove statements in the nature of threats by Julia Castle against him, and the full conversation which the commonwealth was entitled to have heard by the jury was that she coupled these quasi threats with the statement that it was because he had beat and bruised her daughter that she said such things. These facts being properly proved in connection with evidence introduced by the defendant, it is immaterial that the same fact was proved in an improper way if as introduced by Harry Castle the evidence was incompetent.

It is urged that while Bonnie Castle was testifying for the commonwealth she testified, not only that appellant had a pistol and that she saw him shoot her mother on the occasion in question, but she stated: "He never come there without he had a gun buckled on his right side." This statement was objected to, and the court overruled appellant's motion to exclude it. As is insisted, this was error, and the motion to exclude should

have been sustained; but it cannot be held to have been prejudicial. Appellant was armed with a pistol on the occasion when he killed Mrs. Castle. Evidence that he was in the habit of carrying a pistol would tend to prove that he did not arm himself and go armed to the scene of the tragedy for the purpose of killing Mrs. Castle or any of those at her home, but that he did so merely because he was accustomed to carry a pistol. Hence, the evidence complained of was beneficial rather than prejudicial.

Appellant complains that Benson Pack, while being cross-examined, was required, over his objection, to state that Julia Castle was deformed, being a hunchback, and insists that this was error and prejudicial. It is insisted that this fact was immaterial and served no purpose save to inflame the jury. It is true that Mrs. Castle was a hunchback, and having killed her appellant was seeking to justify the homicide on the ground that it was necessary in his self-defense. We think the commonwealth had the right to prove the physical condition of the person whom appellant claimed to have killed in self-defense. The jury was required to judge from the evidence heard as to the facts and circumstances surrounding the parties, whether or not, at the time accused fired the shot that killed his victim, he believed, or had reasonable grounds to believe, that he was then and there in danger of death or great bodily harm at her hands. Evidence of her physical infirmities was competent on that question. No authority to the contrary is cited by learned counsel for appellant, and we assume that none can be found.

Deb Justice testified for the defendant. He testified fully as to his conduct, actions, and words while they were together before reaching the home of the Castles. While being cross-examined, ground for contradiction was laid, and subsequently it was proved by two witnesses that after appellant had shot Mrs. Castle, and while he (Justice) in company with these witnesses was going for a doctor, he stated that Benson Pack "had killing in his heart that night." All of this was objected to, but was permitted to go to the jury under an admonition from the court that it was competent only for the purpose of affecting the credibility of the witness Deb Justice, if it did affect his credibility, and for no other purpose. Appellant insists that this was error, and we can but so regard it. What the witnesses stated Justice said was

but a conclusion. If he had been offered as a witness for the commonwealth, the statement could not have been received from him as evidence against appellant. It certainly would not have been competent for him to state, while testifying for appellant, that he (appellant) "did not have killing in his heart that night." It is only when the statement made at another time is different from the testimony given that the party against whom the testimony is given may contradict the witness by proving such statement. See section 597, Civil Code. This testimony was incompetent, and should not have been admitted. If this were the only error in the record, there might be room for the conclusion that it was not prejudicial.

In his argument to the jury an attorney hired to help prosecute this case stated:

"The defendant knocked out the teeth of his wife and pulled locks of hair from her head, with portions of the scalp attached to it."

The appellant objected and moved the court to admonish the jury not to consider those statements. The court overruled the motion, to which appellant excepted. There is no evidence in the record to sustain these statements. It is impossible to escape the conclusion that such argument unsupported by evidence was prejudicial. The purpose sought to be served by the attorney in making it cannot be understood, but it could have had only one effect on the jury. It necessarily served to excite their prejudices against appellant about a matter other than the charge for which he was being tried, and we cannot speculate that it did not enter into the verdict returned by the jury. This unwarranted argument, together with the incompetent testimony above referred to, must be regarded as sufficiently prejudicial to the substantial rights of appellant to demand that the judgment herein be reversed. Upon another trial the attorney for the commonwealth will also omit from his argument any reference to the fact that they are now building in Chicago a $12,000,000 jail with shower baths, and any reference to the fact that any of the witnesses did not want to tell what they knew until he threatened them with the court.

For the reasons indicated, the judgment herein is reversed, and this cause remanded for a new trial, and other proceedings consistent herewith.